# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| AURACLE HOMES, LLC; FD MANAGEMENT, LLC; BUCKLEY FARMS, LLC; ORANGE CAPITOL LLC; 216 EAST MAIN STREET MERIDEN, LLC; BD PROPERTY HOLDINGS, LLC; PRIME MANAGEMENT, LLC; AND, HABERFELD ENTERPRISES, LLC,<br><br>          Plaintiffs,<br><br>v.<br><br>NED LAMONT<br><br>          Defendant. | **Case No. _____**<br><br><br>**COMPLAINT**<br><br><br>JUNE 16, 2020 |

Plaintiffs AURACLE HOMES, LLC; FD MANAGEMENT, LLC; BUCKLEY FARMS, LLC; HABERFELD ENTERPRISES, LLC; ORANGE CAPITOL, LLC; 216 EAST MAIN STREET MERIDEN, LLC; BD PROPERTY HOLDINGS, LLC; PRIME MANAGEMENT, LLC; and, HABERFELD ENTERPRISES, LLC  (together, "Plaintiffs"), by and through the undersigned counsel of record, bring this complaint for injunctive and declaratory relief against the Defendant, Ned Lamont ("Defendant?) and allege as follows:

## I. INTRODUCTION

1.   Plaintiffs own and manage real property in the State of Connecticut, available to rent.

2.   On March 19, 2020, the Plaintiffs, either directly or through a property management company, had lease agreements with tenants under which they were able, pursuant to state statute, to exercise certain rights and derive certain benefits.

3.      On March 19, 2020, the Defendant, Connecticut Governor Ned Lamont, issued Executive Order 7G which, among other things, foreclosed the Plaintiffs from being able to access and seek remedy from Connecticut courts.

4.      On April 10, 2020, the Defendant issued Executive Order 7X which illegally restricted the rights of the Plaintiffs as landlords, and property owners.

5.      By their Complaint, the Plaintiffs allege that the conduct of the Defendant, undertaken under color of law, illegally deprived them of their constitutional right to private contract, right to due process of law, right to equal protection under the law, and right against having their property taken for public use without just compensation.

6.      Further, the terms of Executive Order 7X are outside the scope of the Governor's authority, and are therefore *ultra vires*.

7.      The Plaintiffs bring this action seeking a declaratory judgment that the Defendant's actions are unconstitutional, and seeking injunctive relief requiring the Defendant to rescind his unconstitutional orders and any attempts at enforcement thereof. Further, the Plaintiffs seek damages.

## II. JURISDICTION & VENUE

8.      This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988, as this action seeks to redress

the deprivation under color of the law, of the rights secured by the United States Constitution. To the extent Plaintiffs' claims may allege or may be construed to allege state law claims, this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a).

9.    Venue lies in this Court under 28 U.S.C. § 1391, as the events giving rise to Plaintiffs' causes of action arose or exist in this District in which the action is brought.

## III. PARTIES

10.    Plaintiff AURACLE HOMES LLC, is an owner of residential real property located in Waterbury, Connecticut that, through FD PROPERTY MANAGEMENT, LLC has a written lease agreement with a tenant.

11.    Plaintiff BUCKLEY FARMS, LLC is an owner of residential real property located in Meriden, Connecticut that, through HABERFELD ENTERPRISES, LLC, has a written lease agreement with tenants.

12.    Plaintiff ORANGE CAPITOL, LLC is an owner of residential real property located in Hartford, Connecticut that has written lease agreements with tenants.

13.    Plaintiff 216 EAST MAIN STREET MERIDEN, LLC is an owner of residential real property located in Meriden, Connecticut that has written lease agreements with tenants.

14.    Plaintiff BD PROPERTY HOLDINGS, LLC through PRIME MANAGEMENT, LLC is an owner of residential real property located in New Haven, Connecticut that has written lease agreements with tenants.

15.     Plaintiff HABERFELD ENTERPRISES, LLC is an owner of residential real

        property located in Bristol, Connecticut that has a written lease agreement with a

        tenant.

16.     The Defendant is the elected Governor of the State of Connecticut. In such capacity,

        Defendant Lamont is the State's supreme executive officer. Connecticut Constitution,

        Art. 4, § 5. As Governor, he is charged with the duty to "take care that the laws be

        faithfully executed" and he is "the conservator of the peace throughout the state." Id.

        Art. 4, § 12. The Defendant is sued in his official capacity and, for his *ultra vires* acts as

        described herein, is also sued in his individual capacity.

## IV.   FACTS APPLICABLE TO ALL COUNTS

17.     In Connecticut, owners of residential real property (hereafter "dwelling unit") who

        want to let the same (hereafter "landlords") to those wanting to occupy it (hereafter

        "tenants") are permitted to do so, with or without a written contract (hereafter

        "lease") for a particular term (hereafter "tenancy").

18.     In Connecticut, the primary rights and responsibilities of landlords and tenants are set

        forth in Connecticut General Statutes (hereafter "C.G.S.") § 47a-1 through § 47a-20f.

19.     In Connecticut, a lease can provide for the payment of money (hereafter "rent") by

        the tenant to the landlord.

20.     In Connecticut a landlord and a tenant can agree on a rent for a tenancy in the

        absence of a lease.

21.   If the tenant fails to pay the rent, the landlord may terminate the tenancy, and regain possession of the property.

22.   The process the landlord must follow to regain possession includes the service of a Notice to Quit Possession ("Notice to Quit") upon the tenant (C.G.S. § 47a-15a) followed by a summary process eviction action using the procedure described in C.G.S. § 47a-23, *et. seq.* to regain possession of the property.

23.   If a landlord fails to follow the statutory eviction process and dispossesses the tenant of the landlord's property without permission of the tenant or the courts, the landlord would be subject to significant penalty. C.G.S. § 47a-43.

24.   On March 10, 2020, in response to the outbreak of the Coronavirus (aka COVID-19), the Defendant declared Public Health and Civil Preparedness Emergencies. (EXHIBIT A)

25.   On March 19, 2020, Defendant Lamont issued Executive Order 7G which, among other things contained a "Suspension of Non-Critical Court Operation and Associated Requirements" expressly ordering:

Notwithstanding any provision of the Connecticut General Statutes or of any regulation, local rule or other provision of law, I hereby suspend, for the duration of this public health and civil preparedness emergency, unless earlier modified or terminated by me, all statutory (1) location or venue requirements; (2) time requirements, statutes of limitation or other limitations or deadlines relating to service of process, court proceedings or court filings; and (3) all time requirements or deadlines related to the Supreme, Appellate and Superior courts or their judicial officials to issue notices, hold court, hear matters and/or render decisions including, but not limited to, the following:

a. All time limitations in Chapters 959, 959a, 960 and 961 of the General

Statutes including, but not limited to, C.G.S. § 54-lg concerning the time of arraignments;

b. and C.G.S. § 54-82m concerning the right to a speedy trial;

c. All time limitations for rendering judgments in civil actions provided in C.G.S. § 51-183b;

d. All time limitations concerning civil process, service and return provided in Chapter 896 of the General Statutes;

e. All statutes of limitations provided in Chapter 926 of the General Statutes;

f. All time limitations concerning the automatic review of terms of probation provided in C.G.S. § 53a-29(g);

g. All time constraints for the filing of administrative appeals provided in C.G.S. § 4-183;

h. All time limitations concerning hearings and rulings pertaining to primary and election disputes provided in Chapter 149 of the General Statutes;

i. All time limitations in Title 46b of the General Statutes including, but not limited to, family, juvenile and child support matters;

j. All venue and filing requirements including, but not limited to, C.G.S. §§ 51-345, 51-348, 51-352 and 51-353, provided in Chapter 890 of the General Statutes;

k. The times and places for the sitting of the Superior Court provided in C.G.S. § 51-181;

l. The notice of sessions provided in C.G.S. § 51-182." (EXHIBIT B)

26.   On April 10, 2020, the Defendant issued Executive Order 7X which, among other things contained "Protections for Residential Renters Impacted by COVID -19," expressly ordering:

"Effective immediately and for the duration of the public health and civil preparedness emergency declared on March 10, 2020 including any period of extension or renewal:

    a.   <u>No Notice to Quit or Service of Summary Process Before July 1.</u> Section 47a-23 of the Connecticut General Statutes is modified to additionally provide, "(f) No landlord of a dwelling unit, and no such landlord's legal representative, attorney-at-law, or attorney-in-fact, shall, before July 1, 2020, deliver or cause to be delivered a notice to quit or serve or return a summary process action, for any reason set forth in this chapter or in sections 21-80 et seq. of the Connecticut General Statutes, except for serious nuisance as defined in section 47a-15 of the Connecticut General Statutes.

    b.   <u>Automatic 60-Day Grace Period for April Rent.</u> Section 47a-15a of the Connecticut General Statutes is modified to additionally provide, "Notwithstanding the provisions of this section, if rent due in April 2020 is unpaid when due and paid within sixty days thereafter, the tenant of a dwelling unit shall not be in default or violation of the rental agreement and the landlord of such unit may not deliver or cause to be delivered a notice to quit or serve or file a summary process action for nonpayment of rent; impose late fees, interest, or penalties; report such rent as late to any credit bureau or tenant screening service; or otherwise retaliate against the tenant. As used in this section, 'tenant' includes a resident of a mobile manufactured home park, as defined in section 21-64, including a resident who owns his own home, and 'landlord' includes a 'licensee' and an 'owner' of a mobile manufactured home park, as defined in section 21-64."

    c.   <u>60-Day Grace Period for May Rent, Upon Request.</u> Section 47a- 15a of the Connecticut General Statutes is further modified to additionally provide, "Notwithstanding the provisions of this section, if rent due in May 2020 is unpaid when due and paid within sixty days thereafter by a tenant who, on or before the 9th day after such rent is due, notifies the landlord or landlord's representative in writing, including but not limited to in written electronic communication, that the tenant needs to delay all or some payment

7

of rent because he or she has become fully or partially unemployed or otherwise sustained a significant loss in revenue or increase in expenses as a result of the COVID-19 pandemic, the tenant of a dwelling unit shall not be in default or violation of the rental agreement and the landlord of such unit may not deliver or cause to be delivered a notice to quit or serve or file a summary process action for nonpayment of such rent; impose late fees, interest, or penalties; report such rent as late to any credit bureau or tenant screening service; or otherwise retaliate against the tenant."

d. <u>Application of Additional Security Deposit to Rent, Upon Request.</u> Section 47a-21 is modified to additionally provide, "(m) Upon the written request of a tenant of a dwelling unit who is not enrolled in the security deposit guarantee program established by the Commissioner of Housing pursuant to Section 8-339 of the Connecticut General Statutes, who has paid a security deposit in an amount that exceeds one month's rent, and who provides written notice, including but not limited to in written electronic communication, that he or she has become fully or partially unemployed or otherwise sustained a significant loss in revenue or increase in expenses as a result of the COVID-19 pandemic, a landlord of such unit shall withdraw an amount of said deposit equal to the amount in excess of one month's rent from an escrow account and apply it toward the rent due in April, May, or June 2020. Notwithstanding subsection (h) of this section, an escrow agent may withdraw funds from an escrow account to comply with such a request. The amount withdrawn by the escrow agent and applied toward the rent due shall no longer be considered an amount of the security deposit for any purpose, including but not limited to the calculation of interest, assignment to successor, and the payment of security deposit and interest at the termination of a tenancy. Notwithstanding subsection (b) of this section, no landlord who has complied with such a request may demand the security deposit be restored to an amount that exceeds one month's rent earlier than the later of the end of the public health and civil preparedness emergency declared on March 10, 2020, including any period of extension or renewal of such emergency, or the date the rental agreement is extended or renewed.

Except as expressly provided herein, nothing in this order shall relieve a tenant of liability for unpaid rent or of the obligation to comply with other terms of a rental agreement or statutory obligations pursuant to Connecticut law. Except as expressly provided herein, nothing in this order shall relieve a landlord of the obligation to comply with a rental agreement or statutory obligations pursuant to Connecticut law." (EXHIBIT C)

27.     Plaintiffs 216 EAST MAIN STREET MERIDEN, LLC and HABERFELD ENTERPRISES, LLC are landlords of residential properties that have not received rent for the months of at least March, April and May of 2020, have not served a Notice to Quit on the tenant(s), and are prohibited from doing so by virtue of Executive Order 7X. But for Executive Order 7X, 216 EAST MAIN STREET MERIDEN, LLC and HABERFELD ENTERPRISES, LLC would immediately serve the non-paying tenants with a Notice to Quit.

28.     Plaintiffs BD PROPERTY HOLDINGS, LLC through  PRIME MANAGEMENT, LLC and 216 EAST MAIN STREET MERIDEN LLC are landlords for residential properties for which they did not receive rent for months prior to the issuance of Executive Order 7X.  These Plaintiffs served their tenant(s) with a Notice to Quit for failing to pay rent, and the tenant(s) are still in possession of the dwelling units. BD PROPERTY HOLDINGS, LLC through  PRIME MANAGEMENT, LLC and 216 EAST MAIN STREET MERIDEN, LLC, by virtue of Executive Order 7X, are prohibited from initiating summary process eviction action(s) against their tenants. But for Executive Order 7X, BD PROPERTY HOLDINGS, LLC, through PRIME

MANAGEMENT, LLC and 216 EAST MAIN STREET MERIDEN, LLC would
have immediately had the tenants served with a summary process eviction action(s).

29.    Plaintiff 216 EAST MAIN STREET MERIDEN, LLC, is a landlord of residential
property for which it did not receive rent for months prior to the issuance of
Executive Order 7G. It had previously served a Notice to Quit on its tenants, the
tenants refused to vacate, and the Plaintiff served the tenants with summary process
eviction actions.  But for Executive Order 7G, 216 EAST MAIN STREET
MERIDEN, LLC would be able to proceed with its summary process eviction
actions and attempt to regain possession of its property.

30.    Plaintiffs BD PROPERTY HOLDINGS, LLC through PRIME MANAGEMENT,
LLC; 216 EAST MAIN STREET MERIDEN, LLC; HABERFELD
ENTERPRISES, LLC; and, BUCKLEY FARMS, LLC through HABERFELD
ENTERPRISES LLC  are landlords of residential properties for which they did not
receive rent for the month of April 2020. They each have lease agreements with the
tenants of their respective properties requiring the payment of rent and providing for
penalties if a tenant fails to pay rent on time. The tenants of these Plaintiffs have told
these Plaintiffs that, because of the Defendant's Order (presumably Executive Order
7X) the tenants are not required to pay their April rent on time, and accordingly the
tenants have failed to do so.

31.    BD PROPERTY HOLDINGS, LLC through PRIME MANAGEMENT, LLC, 216
EAST MAIN STREET MERIDEN, LLC; HABERFELD ENTERPRISES, LLC;

and BUCKLEY FARMS, LLC , are precluded, by Executive Order 7X from
employing the remedies available to them under their respective leases.

32.  Plaintiffs, BD PROPERTY HOLDINGS, LLC through PRIME MANAGEMENT,
LLC, 216 EAST MAIN STREET MERIDEN LLC, HABERFELD ENTERPRISES,
LLC  and BUCKLEY FARMS, LLC through HABERFELD ENTERPRISES, LLC
are landlords of residential properties for which they did not receive rent on time for
the month of May 2020. They each have written lease agreements with the tenants of
their respective properties requiring the payment of rent and providing for penalties
for a tenant failing to pay rent on time. Tenants of these Plaintiffs have told these
Plaintiffs that, because of the Defendant's Order (presumably Executive Order 7X)
the tenants are not required to pay their May rent on time, and accordingly the
tenants have failed to do so.

33.  BD PROPERTY HOLDINGS, LLC through PRIME MANAGEMENT, LLC; 216
EAST MAIN STREET MERIDEN LLC; HABERFELD ENTERPRISES, LLC; and
BUCKLEY FARMS, LLC are precluded, by Executive Order 7X from employing the
remedies available to them under their respective leases.

34.  Plaintiffs AURACLE HOMES LLC through FD PROPERTY MANAGEMENT
LLC and ORANGE CAPITOL LLC, are landlords of residential properties.
Pursuant to their respective leases, they received and held as a security deposit, an
amount equivalent to two months of rent. The tenants of these Plaintiffs are not
enrolled in a security deposit guarantee program pursuant to CGS 8-339. The tenants

11

of these Plaintiffs have asked these Plaintiffs in writing to apply part of the security deposit held by these Plaintiffs to the May and/or June 2020 rent. By virtue of Executive Order 7X, AURACLE HOMES, LLC through FD PROPERTY MANAGEMENT, LLC, and ORANGE CAPITOL, LLC were forced to relinquish a portion of their legally retained security deposit.

35.   Upon information and belief, while the Defendant has used the cover of emergency to close off all avenues for the Plaintiffs to proceed with the statutory process of regaining possession of their residential rental property, he has not treated similarly situated landlords of commercial rental property in the same fashion.

36.   The Legislature has provided no findings or declarations to support any legitimate government interest for permitting the commercial eviction process while totally halting the residential eviction process.

37.   The actions and orders of the Defendant, who is and has been at all relevant times acting under color of state law, are therefore denying the Plaintiffs their right to own and possess residential real property as they see fit, and as legally authorized by U.S. Constitution and Connecticut statute.

38.   The Defendant has abused the position of his office by using the COVID-19 pandemic to illegally expand his power by unprecedented lengths, without any proper Constitutional, statutory, or common law basis therefor. Plaintiffs thus bring this lawsuit to assert challenges to the *ultra vires* actions undertaken by the Defendant under color of law.

## COUNT 1 – DEPRIVATION OF CIVIL RIGHTS
## VIOLATIONS OF THE EQUAL PROTECTION OF THE LAWS
## 42 U.S.C. § 1983

39.    Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

40.    Article IV, Section 2 of the United States Constitution states in relevant part ". . . nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws."

41.    The Fourteenth Amendment to the United States Constitution provides in relevant part: "No state shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."

42.    Connecticut law allows those who follow the legal process established by state statute to own and let real property, with the legal ability to repossess such property from the tenant upon the tenant's failure to abide by the statutory and/or lease terms of the tenant's tenancy, including the timely payment of rent.

43.    The Defendant has, under color of law but without legal authority, infringed on and interfered with the Plaintiffs' rights under the United States Constitution, Connecticut statutes, and the common law, while leaving the rights of landlords of commercial properties undisturbed.

44.    The Plaintiffs have been damaged and continue to be damaged by the Defendant's conduct.

45.  The Plaintiffs have no adequate remedy at law as no damages could compensate the Plaintiffs for the deprivation of their constitutional rights.

46.  Without an order for temporary injunctive relief pending a hearing on the Plaintiffs' claims for permanent injunctive relief, the Plaintiffs will suffer ongoing irreparable harm.

## COUNT 2 – DEPRIVATION OF CIVIL RIGHTS VIOLATIONS OF THE RIGHT TO PRIVATE CONTRACT 42 U.S.C. § 1983

47.  Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

48.  By his conduct, the Defendant has engaged in behavior which violates Article 1, Section 10 of the United States Constitution, known as the Contracts Clause.

49.  Executive Order 7X purportedly has the effect of law, though unilateral and issued only by Defendant.

50.  The portions of Executive Order 7X challenged here illegally interfere with the Plaintiffs rights and abilities to fulfill their obligations under, and reap the benefits of, leases and agreements entered into prior to the Executive Order.

51.  The portions of Executive Order 7X challenged here, do not serve a legitimate public purpose sufficient to justify the infringement of the Plaintiffs' constitutional rights.

52.  Even if the Defendant could put forth a legitimate public purpose for  negating and amending the rights, terms, obligations, benefits and expectations under private

contracts, the extreme measures the Defendant employed are unreasonable, unnecessary and not legally justifiable.

53. The Plaintiffs have been damaged and continue to be damaged by the Defendant's conduct.

54. The Plaintiffs have no adequate remedy at law as no damages could compensate the Plaintiffs for the deprivation of their Constitutional rights.

55. Without an order for temporary injunctive relief pending a hearing on the Plaintiffs' claims for permanent injunctive relief, the Plaintiffs will suffer ongoing irreparable harm.

## COUNT 3 – DEPRIVATION OF CIVIL RIGHTS
## VIOLATIONS OF THE RIGHT TO DUE PROCESS
## 42 U.S.C. § 1983

56. Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

57. The Defendant's Executive Order affords the Plaintiffs no legal or administrative process to contest its application to them, or to vindicate their rights injured thereby.

58. The Defendant's Executive Order has illegally caused the Plaintiffs to lose money, rights and property which were rightfully theirs.

59. The Defendant's conduct deprives the Plaintiffs of liberty and property without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

60.   The Plaintiffs have no adequate remedy at law as no damages could compensate the Plaintiffs for the deprivation of their Constitutional rights.

61.   Without an order for temporary injunctive relief pending a hearing on the Plaintiffs' claims for permanent injunctive relief, the Plaintiffs will suffer ongoing irreparable harm.

## COUNT 4 – DEPRIVATION OF CIVIL RIGHTS
## VIOLATIONS OF THE TAKINGS CLAUSE
## 42 U.S.C. § 1983

62.   Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

63.   The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."

64.   The Fifth Amendment provides in relevant part "nor shall private property be taken for public use, without just compensation."

65.   The Defendant's challenged conduct caused, under color of law, the illegal seizure without just compensation of the Plaintiffs security interests in their real estate which the Plaintiffs possessed prior to the issuance of Executive Order 7X.

66.   These uncompensated seizures violate the Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, and Article I, Section 8 of the Connecticut Constitution.

67.   The Defendant's Executive Order 7X's taking of Plaintiffs' property is for a public purpose, as the taking is one the Defendant claimed is protecting Connecticut's public health, safety, and welfare.

68.   The Defendant has placed the cost of his Orders benefitting the public on the shoulders of private landlords, including the Plaintiffs, and has failed to offer just compensation for these takings.

69.   The Defendant's Executive Orders jeopardize the sustainability of the Plaintiffs' financial viability and in turn their rights to property ownership.

70.   The U.S. and Connecticut Takings Clauses require the government pay just compensation for any such taking.

71.   The Takings Clauses apply to temporary as well as permanent interference with private use of property.

72.   As a result of the Defendant's Executive Orders, Plaintiffs, and those similarly situated, have at least temporarily lost all economically beneficial use of their real and personal property.

73.   The Plaintiffs have been damaged and continue to be damaged by the Defendant's conduct.

74.   The Plaintiffs have no adequate remedy at law as no damages could compensate the Plaintiffs for the deprivation of their Constitutional rights.

75. Without an order for temporary injunctive relief, pending a hearing on the Plaintiffs' claims for permanent injunctive relief, the Plaintiffs will suffer ongoing irreparable harm.

## COUNT 5 – *ULTRA VIRES* ACT

76. Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

77. "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." Constitution of the United States, Art. I, s 10, cl. 1.

78. The Connecticut Constitution guarantees the right to be able to access Connecticut's courts: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Connecticut Constitution, Art. First, § 10.

79. The Defendant in his capacity as Governor for the State of Connecticut is not empowered by the U.S. Constitution, the Connecticut Constitution, Connecticut Statute, nor by the common law to violate the constitutional rights of the citizens of Connecticut.

80. The Defendant issued the portions of Executive Order 7G challenged here without any legal authority granted to him by the citizens of Connecticut, the Connecticut Legislature, or by virtue of his holding the title of Governor for the State of Connecticut.

81. The Defendant issued the portions of Executive Order 7X challenged here without any legal authority granted to him by the citizens of Connecticut, the Connecticut Legislature, or by virtue of his holding the title of Governor for the State of Connecticut.

82. The Defendant did not, and does not have the legal authority to halt the legal process of evictions.

83. The Defendant did not, and does not have the legal authority to interfere in private contracts between landlords and tenants.

84. The Defendant's conduct challenged here is outside of the scope of his job as Governor, and beyond the statutory limitations of his powers and authorities as Governor.

85. The Defendant's conduct and the resulting Executive Orders challenged here are *ultra vires* and therefore void.

86. For the *ultra virus* conduct challenged here, the Defendant is sued in his individual capacity.

87. The Plaintiffs have been damaged and continue to be damaged by the Defendant's conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully demand the following relief:

1.    A trial by jury on all issues so triable pursuant to Fed.R.Civ.P. 38;

2.    Compensatory damages as will be proven at trial;

3.    Punitive damages under 42 U.S.C. § 1983;

4.    Attorney's fees, expert fees, and costs pursuant to 42 U.S.C. § 1988;

5.    A declaratory judgment that the provisions of Executive Order 7X affecting the relationship between landlords and tenants violate the rights of Equal Protection guaranteed to the Plaintiffs;

6.    A declaratory judgment that the provisions of Executive Order 7X affecting the relationship between landlords and tenants violate the private right to contract guaranteed to the Plaintiffs;

7.    A declaratory judgment that the provisions of Executive Order 7G and 7X affecting the relationship between landlords and tenants violate the due process rights guaranteed to the Plaintiffs;

8.    A declaratory judgment that the provisions of Executive Order 7X affecting the relationship between landlords and tenants violate the rights against taking of property without just compensation guaranteed to the Plaintiffs;

9.    A declaratory judgment decreeing that the provisions of Executive Order 7G and 7X affecting the relationship between landlords and tenants was outside the scope and

authority of the Governor of the State of Connecticut, and thus any such provisions are *ultra vires*, and void;

10.   A preliminary and permanent injunction prohibiting the Defendant and each of his employees, officers, agents, representatives, and those acting in concert or participation with him, from taking any action to enforce Executive Order 7X or to sanction, charge, punish or penalize any Landlord for failing or refusing to follow or abide by such Executive Order.

11.   A preliminary and permanent injunction requiring the Defendant to issue Executive Orders which modify Executive Order 7G so as to provide the Plaintiffs and those like them a process under which to issue Notices to Quit, to initiate and pursue summary process eviction actions, and to proceed with execution of eviction judgments.

12.   A preliminary and permanent injunction requiring the Defendant to issue Executive Orders which repeal those portions of Executive Order 7G and 7X that are outside the scope of the legal authority of the Defendant as Governor of Connecticut.

13.   Any and all other and further legal and equitable relief, including injunctive relief, against the Defendant as necessary to effectuate the Court's judgment, or as the Court otherwise deems just and proper.

Dated: JUNE 16, 2020                 Respectfully submitted,

                                                */s/ Craig C. Fishbein*
                                           Craig C. Fishbein, Esq.
(ct25142)
FISHBEIN LAW FIRM, LLC
100 South Main Street
P.O. Box 363
Wallingford, Connecticut 06492
Telephone: 203.265.2895
E-mail: ccf@fishbeinlaw.com

                                                */s/ Doug Dubitsky*
                                           Doug Dubitsky, Esq.
(ct21558)
LAW OFFICES OF DOUG DUBITSKY
P.O. Box 70
North Windham, CT 06256
Telephone: 860.933.9495
Facsimile: 866.477.1120
Email: doug@lawyer.com

                                              */s/ Cara Christine Pavalock-D'Amato*
                                           Cara Christine Pavalock-D'Amato, Esq.
(ct29967)
LAW OFFICE OF CARA C. PAVALOCK
17 Riverside Avenue
Bristol, CT 06010
Telephone: 754.444.8803
Email: carapavalock@gmail.com

                                           Attorneys for the Plaintiffs