STATE OF CONNECTICUT

BY HIS EXCELLENCY

NED LAMONT

EXECUTIVE ORDER NO. 7G

PROTECTION OF PUBLIC HEALTH AND SAFETY DURING COVID-19 PANDEMIC AND RESPONSE – PRESIDENTIAL PRIMARY POSTPONEMENT AND ADDITIONAL PUBLIC HEALTH MEASURES

**WHEREAS,** on March 10, 2020, I issued declarations of public health and civil preparedness emergencies, proclaiming a state of emergency throughout the State of Connecticut as a result of the coronavirus disease 2019 (COVID-19) outbreak in the United States and confirmed spread in Connecticut; and

**WHEREAS,** my Executive Order No. 7, dated March 12, 2020, among other things, prohibited gatherings of 250 people or more for social and recreational activities, including but not limited to, community, civic, leisure, and sporting events; parades; concerts; festivals; movie screenings; plays or performances; conventions; and similar activities, and suspended various statutes and regulations to protect public health and safety; and

**WHEREAS,** my Executive Order No. 7A, dated March 13, 2020, authorized the Commissioner of Public Health to restrict entrance into nursing homes and similar facilities to protect people who are most vulnerable to COVID-19; and

**WHEREAS,** my Executive Order No. 7B, dated March 14, 2020, among other things, modified in-person open meetings requirements, waived certain rules to mitigate the critical shortage of hand sanitizer and personal protective equipment (PPE), maintain and increase the availability of childcare, and provide for increased healthcare resources and facilities; and

**WHEREAS,** my Executive Order No. 7C, dated March 15, 2020, among other things, cancelled classes in public schools for at least two weeks, provided for closure and remote conduct of business at Department of Motor Vehicle branches, extended deadlines for municipal budget preparations, and suspended or modified laws and regulations governing health care data and visitation at certain health care and congregate care settings; and

**WHEREAS,** my Executive Order No. 7D, dated March 16, 2020, restricted social and recreational gatherings of all types to fewer than 50 people, closed bars and restaurants to all service except food and non-alcoholic beverage takeout and delivery, closed gyms, fitness centers and movie theaters, and prohibited on-site operations at off-track betting facilities; and

**WHEREAS,** my Executive Order No. 7E, dated March 17, 2020, among other things, waived the requirement for an 180-day school year, suspended fingerprinting availability to that for critical requirements, extended the duration of various licenses and permits under the authority of the Commissioner of Emergency Services and public protection, and suspended certain requirements for recoupment of overpayment and hearings conducted by the Department of Social Services; and

**WHEREAS,** my Executive Order No. 7F, dated March 18, 2020, ordered the closure of Large Shopping Malls, the closure of places of public amusement except public parks and open recreation areas, expanded Medicaid telehealth coverage, waived in-person service, hearing, and screening requirements for certain Probate Court proceedings in vulnerable group care settings, and clarified my order cancelling school classes; and

**WHEREAS,** COVID-19 is a respiratory disease that spreads easily from person to person and may result in serious illness or death; and

**WHEREAS,** the World Health Organization has declared the COVID-19 outbreak a pandemic; and

**WHEREAS,** the risk of severe illness and death from COVID-19 appears to be higher for individuals who are 60 years of age or older and for those who have chronic health conditions; and

**WHEREAS,** to reduce spread of COVID-19, the United States Centers for Disease Control and Prevention and the Connecticut Department of Public Health recommend implementation of community mitigation strategies to increase containment of the virus and to slow transmission of the virus, including cancellation of gatherings of fifty people or more and social distancing in smaller gatherings; and

**WHEREAS,** healthcare providers providing services to patients and those with Medical coverage, need flexibility in testing, diagnosis and treatment while supporting adequate social distancing measures, and to provide healthcare services during the course of the COVID-19 pandemic through the increased utilization of the delivery of health care or other health services through certain modes of telehealth service; and

**WHEREAS,** subsection (a)(11) of Section 19a-906 of the Connecticut General Statutes provides, in part, that "telehealth" does not include, in part, the use of audio-only telephone as a mode of delivering health care or health services via information and communication technologies to facilitate the diagnosis, consultation and treatment, education, care management and self-management of a patient's physical and mental health; and

**WHEREAS,** subsection (a)(12) of Section 19a-906 of the Connecticut General Statutes provides, in part, that a "telehealth provider" means health care providers specifically licensed pursuant to the Connecticut General Statutes governing those health care professions; and

**WHEREAS,** subsection (f) of Section 19a-906 provides, in part, that the provision of telehealth services and health records maintained and disclosed as part of a telehealth interaction shall comply with the provisions of the Health Insurance Portability and Accountability Act of 1996 P.L. 104-191, as amended from time to time; and

**WHEREAS,** an in-person visit to investigate a report that an elderly person allegedly is being, or has been, abused, neglected exploited or abandoned, or is in need of protective services, is likely to increase the risk of transmission of COVID-19; and

**WHEREAS,** if COVID-10 is transmitted to an elderly person, there is a high risk of serious illness or mortality; and

**WHEREAS,** the Department of Social Services ("DSS") can fulfill its statutory obligation to investigate such reports without making an in-person visit of the elderly person by using alternative means of communication; and

**WHEREAS,** DSS staff may be reduced as a result of illness or the need to self-isolate due to COVID-19, and may need additional time to disclose the results of its investigation of such reports; and

**WHEREAS,** attendance at public proceedings is likely to increase the risk of transmission of COVID-19; and

**WHEREAS,** in consultation with the Chief Court Administrator on behalf of the Chief Justice of the Supreme Court and the Judicial Branch, I have determined that there exists a compelling state interest that courts conduct only essential business in order to minimize the spread of COVID-19; and

**WHEREAS,** there is a compelling interest in reducing the risk of transmission of COVID-19 among voters, poll workers, and residents, which risk would be heightened in the settings of indoor polling places and potential lines for voting, especially in polling places such as senior centers, schools, community centers, and other public facilities;

**NOW, THEREFORE, I, NED LAMONT,** Governor of the State of Connecticut, by virtue of the authority vested in me by the Constitution and the laws of the State of Connecticut, do hereby **ORDER AND DIRECT:**

1. **Postponement of Presidential Primary to June 2.** Under my sole authority pursuant to the declaration of public health and civil preparedness emergency, and to protect the health and safety of voters, poll workers, and the most vulnerable members of our population, I hereby modify Section 9-464 of the Connecticut General Statutes to provide that on June 2, 2020 each party shall conduct a primary in each town if the names of two or more candidates for President of the United States are to be placed on such party's ballot in accordance with the provisions of chapter 154 of the General Statutes.

2. **Suspension of Non-Critical Court Operations and Associated Requirements.** Notwithstanding any provision of the Connecticut General Statutes or of any regulation, local rule or other provision of law, I hereby suspend, for the duration of this public health and civil preparedness emergency, unless earlier modified or terminated by me, all statutory (1) location or venue requirements; (2) time requirements, statutes of limitation or

other limitations or deadlines relating to service of process, court proceedings or court filings; and (3) all time requirements or deadlines related to the Supreme, Appellate and Superior courts or their judicial officials to issue notices, hold court, hear matters and/or render decisions including, but not limited to, the following:

   a. All time limitations in Chapters 959, 959a, 960 and 961 of the General Statutes including, but not limited to, C.G.S. § 54-1g concerning the time of arraignments
   b. and C.G.S. § 54-82m concerning the right to a speedy trial;
   c. All time limitations for rendering judgments in civil actions provided in C.G.S. § 51-183b;
   d. All time limitations concerning civil process, service and return provided in Chapter 896 of the General Statutes;
   e. All statutes of limitations provided in Chapter 926 of the General Statutes;
   f. All time limitations concerning the automatic review of terms of probation provided in C.G.S. § 53a-29(g);
   g. All time constraints for the filing of administrative appeals provided in C.G.S. § 4-183;
   h. All time limitations concerning hearings and rulings pertaining to primary and election disputes provided in Chapter 149 of the General Statutes;
   i. All time limitations in Title 46b of the General Statutes including, but not limited to, family, juvenile and child support matters;
   j. All venue and filing requirements including, but not limited to, C.G.S. §§ 51-345, 51-348, 51-352 and 51-353, provided in Chapter 890 of the General Statutes;
   k. The times and places for the sitting of the Superior Court provided in C.G.S. § 51-181;
   l. The notice of sessions provided in C.G.S. § 51-182;

3. **Further Clarification of Limits on Restaurants, Bars and Private Clubs.** Effective at 12:00 p.m. on March 20, 2020, Executive Order 7D, which, among other things, restricted sales of alcoholic beverages by certain licensees, is modified as follows: Any business with an active restaurant, café or tavern liquor permit issued by the Department of Consumer Protection shall be permitted to sell sealed containers of alcoholic liquor for pick up at such restaurant, café or tavern under the following conditions: (i) the sale shall accompany a pick-up order of food prepared on the premises; (ii) the type of alcoholic liquor sold for off-premise consumption shall be the same as what the permit type would have permitted for on-premise consumption prior to Executive Order 7D, and (iii) the hours of such sales that include alcoholic liquor as part of the take-out order shall be the same as those for a package store.

Delivery of alcoholic liquor by licensees with these permit types is not permitted. In addition:
   a. Any business whose liquor permit allows for the manufacture of alcoholic liquor, in addition to sales for on-premise and off-premise consumption, shall be permitted to sell sealed bottles of alcoholic liquor for off-premise consumption in a manner consistent with their manufacturer permit. Delivery of alcoholic liquor by these permit types is not permitted.
   b. The Commissioner of Consumer Protection may issue any implementing orders and guidance that she deems necessary to implement this order.

4. **Restriction on Operation of Barbershops, Hair Salons, Tattoo or Piercing Parlors and Related Public Businesses.** Throughout the State, effective at 8:00 p.m. on March 20, 2020, the rendering of services by barbers, hairdressers and cosmeticians, nail technicians, electrologists, estheticians, eyelash technicians, and tattoo and piercing providers is prohibited in all public settings including, but not limited to, barbershops, beauty shops, hairdressing salons, nail salons, spas, kiosks, and tattoo or piercing establishments. The Commissioner of Public Health may issue any order she deems necessary to implement or modify such prohibition without further order from me.

5. **Flexibility for Medicaid Enrolled Providers and In-Network Providers for Commercial Fully Insured Health Insurance to Perform Telehealth Through Additional Methods.** The provisions of Section 19a-906 of the Connecticut General Statutes and any associated regulations, rules and policies regarding the delivery of telehealth are modified or suspended as follows:

   a. Subsection (a)(11)'s definition of "telehealth" is modified such that for telehealth providers that are Medicaid enrolled providers providing covered telehealth services to established patients who are Medicaid recipients, or telehealth providers that are in-network providers for commercial fully insured health insurance providing covered telehealth services to patients with whom there is an existing provider-patient relationship, these providers may engage in telehealth through the use of audio-only telephone;

   b. Subsection (a)(12)'s requirements for the licensure, certification or registration of telehealth providers shall be suspended for such telehealth providers that are Medicaid enrolled providers or in-network providers for commercial fully insured health insurance providing telehealth services to patients, in accordance with any related orders issued by the Commissioner of Public Health pursuant to her established authority as a result of this declared public health and civil preparedness

emergency and in accordance with Sections 19a-131a, 19a-131j and 28-9.

    c. Subsection (f)'s requirements that the provision of telehealth services and health records maintained and disclosed as part of a telehealth interaction shall comply with the provisions of the Health Insurance Portability and Accountability Act of 1996 P.L. 104-191, as amended from time to time (HIPAA), is modified to permit telehealth providers that are Medicaid enrolled providers or in-network providers for commercial fully insured health insurance providing telehealth services to patients to utilize additional information and communication technologies consistent and in accordance with any direction, modification or revision of requirements for HIPAA compliance as related to telehealth remote communications as directed by the United States Department of Health and Human Services, Office of Civil Rights during the COVID-19 pandemic.

    d. Notwithstanding paragraphs a through c herein, a provider who elects to provide telehealth services for a patient who is not a Medicaid beneficiary or covered by a fully-insured commercial plan, may engage in "telehealth" services as defined in such paragraphs for such patient, provided that any provider engaging in telehealth services under this section must, prior to engaging in such services, determine whether a patient is covered by a health plan other than Medicaid or a fully-insured commercial plan, and whether such plan provides coverage for such telehealth services. A provider who receives payment under such health plan shall not bill a patient for any additional charges beyond the reimbursement received under such health plan. A provider who determines that payment is not available under another such health plan or who determines a patient is uninsured, shall accept as reimbursement for that service as payment in full, the amount that Medicare reimburses for such service, provided that if the provider determines that the patient is uninsured or otherwise unable to pay for such services, the provider shall offer financial assistance, if such provider is otherwise required to provide financial assistance under state or federal law.

    e. Any related regulatory requirement that such telehealth services be provided from a provider's licensed facility is hereby waived.

6. **Temporary Suspension of In-Person Investigative Visits Regarding Reports of Elder Abuse.** Section 17b-452 is modified to provide the Commissioner of Social Services with authority to waive the required in-person visit to an elderly person in connection with investigation of a report of suspected abuse, neglect, exploitation or abandonment, or a need for protective

services, and, if possible and appropriate, use alternative means to conduct such in-person visit.

7. **Extension of Time for Disclosure of Investigation Results.** Section 17b-452 of the Connecticut General Statutes is modified to provide the Commissioner of Social Services with authority to extend by up to ninety (90) days the requirement that the Commissioner of Social Services, not later than forty-five (45) days after completing an investigation, disclose, in general terms, the result of the investigation to the person or persons who reported the suspected abuse, neglect, exploitation or abandonment or a need for protective services.

Unless otherwise specified herein, this order shall take effect immediately and shall remain in effect for the duration of the public health and civil preparedness emergency, unless earlier modified by me.

Dated at Hartford, Connecticut, this 19th day of March, 2020.

Ned Lamont
Governor

By His Excellency's Command

Denise W. Merrill
Secretary of the State