# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AURACLE HOMES, LLC., et al., | : | CIVIL ACTION NO. 3:20-CV-829 (VAB) |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | |
| | : | |
| NED LAMONT | : | |
| *Defendant* | : | DECEMBER 31, 2020 |

## **DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

Pursuant to Local Rule 7(d) the defendant, Governor Lamont, submits this reply brief in support of Defendant's Motion to Dismiss the Amended Complaint (ECF #44) and in response to Plaintiffs' Opposition to Defendant's Motion to Dismiss (ECF # 51)(hereinafter "*Opp.*").

Executive Order (hereinafter "EO") 9T was issued after plaintiffs' brief in opposition was filed and extended the eviction moratorium EOs until February 9, 2021, but still makes an exception for nonpayment of rent due on or before February 29, 2020, and for serious nonpayment of rent. EO 9T.[1] EO 9T also extends the use of security deposits in excess of one month's rent to pay rent due from October 1, 2020 through February 9, 2021. *Id*. The federal government has passed a stimulus package that has extended the CDC federal eviction moratorium through the end of January 2021 and provides $25 billion in rental assistance.[2]

## I. Lack of Jurisdiction –

*Ultra Vires* **Claim -** Plaintiffs challenge the EOs made pursuant to Conn. Gen. Stat. §§ 28-9 and 19a-131a as being *ultra vires*. "A state officer acts *ultra vires* when he acts beyond the scope of his statutory authority, or pursuant to authority deemed to be unconstitutional." *Brown*

---

[1] Executive Order 9T. https://portal.ct.gov/-/media/Office-of-the-Governor/Executive-Orders/Lamont-Executive-Orders/Executive-Order-No-9T.pdf. (SA-1)

[2] A Look at What's in the Stimulus Package Trump Signed - The New York Times (nytimes.com). https//www.nytimes.com/2020/12/28/business/economy/second-stimulus-package.html.

*v. New York*, 975 F. Supp. 2d 209, 227 (N.D.N.Y. September 30, 2013). Plaintiffs claim that "[t]he Defendant's conduct challenged here is outside of the scope of his job as Governor, and beyond the statutory limitations and his powers and authorities as Governor." Amend. Compl., ¶ 87. Plaintiffs state that the *ultra vires* claim is against Governor in his individual capacity only and as a result they are entitled to compensatory and punitive damages. *Opp.*, p. 17.

Plaintiffs *ultra vires* claim against Governor in his individual capacity for any federal claims should be dismissed on the grounds of qualified immunity as outlined in Defendant's Memorandum of Law in Support of Motion to Dismiss (ECF # 44-1)(hereinafter "*MIS MTD*"), p. 38. Plaintiffs have not addressed the defendant's argument on qualified immunity and as a result any objection on qualified immunity is waived. *See Thurmand v. Univ. of Conn*, 2019 U.S. Dist. LEXIS 67690, at *17-18 (D. Conn. April 22, 2019).

As to any state law claims, the court should decline to exercise supplemental jurisdiction. *MIS MTD*, p. 39. If the court were to decide the *ultra vires* claim, it should be dismissed for lack of jurisdiction. First, the doctrine of sovereign immunity deprives this court of subject matter jurisdiction because under Connecticut law this is a claim against the state.

> To determine whether a claim has been brought against the state or against a defendant in his individual capacity, the court must examine four criteria, all four of which must be satisfied for the claim to be deemed against the state. The criteria are: (1) a state official has been sued; (2) the suit concerns some matter in which that official represents the state; (3) the state is the real party against whom relief is sought, and (4) the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability.

*Thurmand,* 2019 U.S. Dist. LEXIS 67690, at *21(internal citations and quotations omitted). The plaintiffs *ultra vires* claim meets all four criteria to find that this claim is against the State of Connecticut and should be treated as such.

The doctrine of sovereign immunity provides that in order to get monetary damages from the state, the legislature has to have waived the state's sovereign immunity, or the plaintiff has

2

obtained a waiver of sovereign immunity from the Claims Commissioner. *See Morgan v. Semple*, 2020 U.S. Dist. LEXIS 72515, *19 (D. Conn. April 24, 2020) (citing *Miller v. Egan*, 265 Conn. 301, 313-318 (2003)) Plaintiffs have not provided a waiver of sovereign immunity that allows money damages on their *ultra vires* claim and they have not claimed they have obtained a waiver from the Claims Commissioner.

There is also no right to monetary damages under the Connecticut Constriction Article First, § 10. "The Connecticut Supreme Court has held that 'Article first, § 10 . . . does not itself create new substantive rights but, instead, protects access to [Connecticut state] courts.' *Binette v. Sabo*, 244 Conn. 23, 30, 710 A.2d 688 (1998). As no substantive rights are created, the Court also declined to exercise supplemental jurisdiction over this claim." *Tyus v. Semple*, 2019 U.S. Dist. LEXIS 70738, at *6-7 (D. Conn. April 26, 2019). *See Townsend v. Sweet*, 2019 U.S. Dist. LEXIS 148246, at *29 (D. Conn. August 30, 2019)("Townsend's claims under Sections 8, 9, 10, and 11 cannot proceed. There is no private action for money damages under Article First, Sections 8 or 10).[3]

This court should also decline to exercise supplemental jurisdiction over this state law claim because it presents novel or unsettled questions of state law. In *Casey v. Lamont*, 2020 Conn. Super. LEXIS 1043, at *13 (X06-UWY-CV-20-6055406-S September 16, 2020), appeal pending and argued 12/11/20, the CT Superior Court found that the Governor's Executive Orders that closed down bars "were validly executed pursuant to his statutory authority found in § 28-9(b)(1) and (7)." The court also found that Conn. Gen. Stat. § 28-9 was "not unconstitutional due to a separation of powers doctrine." *Id.*, at *20-21. This court should decline jurisdiction of

---

[3] *Sentementes v. GE,* 2014 U.S. Dist. LEXIS 86596, *28-29 (D. Conn. June 25, 2014)("Although Defendants do not challenge Plaintiffs' claim to the extent that they assert a violation of Article 1, section 10 of the Connecticut state constitution, the Court will dismiss that claim sua sponte, without leave to replead, as Connecticut courts do not recognize a private right of action under that clause.")

a state law claim while the issue of state law is pending before the Connecticut Supreme Court.

Furthermore, Conn. Gen. Stat. § 4-165(a) provides statutory immunity which deprives this court of subject matter jurisdiction. *See Sousa v. Roque*, 2005 U.S. Dist. LEXIS 35885 at *8 (D. Conn. 2005). Conn. Gen. Stat. § 4-165(a) provides that "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter." "Claims involving the doctrines of common law sovereign immunity and statutory immunity pursuant to § 4-165, implicate the Court's subject matter jurisdiction." *Kelly v. Albertsen, M.D.,* 114 Conn. App. 600, 605 (Conn. App. Ct. 2009), *quoting Mercer v. Strange*, 96 Conn. App. 123, 128 (Conn. App. Ct. 2006). The plaintiffs have not alleged wanton, reckless or malicious conduct by the Governor and therefore, any claim against him in his individual capacity must be dismissed.

**Mootness** - Defendant's mootness argument does not apply to all of plaintiffs' claims, but only to claims that are based on superseded orders or that the subject to the federal mortarium. The plaintiffs argue that the claims based on superseded executive orders fall under the "voluntary cessation order and the federal moratorium does not moot the plaintiffs' claims.[4] *Opp*., p. 7. The voluntary cessation exception does not automatically apply just because a defendant stops the challenged conduct. *See E.I. Dupont de Nemours & Co. v. Invista B.V.*, 473 F.3d 44, 47 (2d Cir. 2006). To the contrary, the purpose of the doctrine is to prevent a defendant

---

[4] Plaintiffs' opposition improperly relies on materials that are neither in their amended complaint nor subject to judicial notice. The Second Circuit has long held—and recently reiterated—that "Plaintiff cannot use his opposition to a motion to dismiss to amend the complaint." *Lieberman v. American Express Co.*, 2020 U.S. Dist. LEXIS 167279, at *9 n.3 (E.D.N.Y. Sep. 13, 2020) (citing *Doe v. Merck & Co.*, 803 F. App'x 559, 560 n.3 (2d Cir. 2020)). Yet, that is precisely what Plaintiffs seek to do here; Plaintiffs' Opposition relies extensively on statements of facts that are not referenced in either their Amended Complaint or exhibits. *Opp*., pp. 12-13 and p. 24. This Court should disregard those materials in their entirety and decide this Motion to Dismiss based on Plaintiffs' Amended Complaint.

from "strategically alter[ing] its conduct in order to prevent or undo a [judicial] ruling adverse to its interest." *Id.* "The exception's purpose is to deter a manipulative litigant [from] immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately thereafter." *Town of Portsmouth*, 813 F.3d 54, 59 (1st Cir. 2016)(internal quotations and citations omitted).

The Executive Orders were not taken for the purpose of manipulating the judicial process in order to immunize the defendant from suit indefinitely. The Governor has been responding to pressure to keep tenants in their homes to prevent the spread of COVID-19 and to landlords who are claiming financial hardship due to the eviction moratorium. The change in the EOs also does not end the litigation, as only evictions that fall into the exceptions of the EOs and are allowed to move forward are moot. Courts assume the good faith of the political branches of government and defer to their decision to change course. *See Town of Portsmouth*, 813 F.3d at 59. Such deference "is the rule, not the exception," and it is a rare case where it can be overcome. *Lamar Advert. of Penn, LLC v. Town of Orchard Park, New York*, 356 F.3d 365, 377 (2d Cir. 2004).

The Governor EOs regarding the eviction moratorium, went from an exception being allowed only for serious nuisance in EO 7X; to allowing evictions for non-payment of rent prior to February 29, 2020, in EO 7DDD; and then to allowing evictions for serious nonpayment of rent, which was for rent arrearage equal to or greater than six months' worth of rent due on or after March 1, 2020, in EO 9E and EO 9H. Recently, the Governor issued EO 9T which has extended the eviction moratorium until February 9, 2021 but continues the exception for rent due prior to February 29, 2020 and for serious nonpayment of rent. There simply is no plausible or good faith argument that defendant repealed portions of the eviction moratorium because of this litigation, or that they did so as a strategic ploy to moot this case or obtain some other litigation

advantage.

Plaintiffs claim that the Governor will reverse the EOs is pure speculation and not supported by their history. The plaintiffs' reliance on *Roman Catholic Diocese v. Cuomo*, 592 U.S. ___, 2020 U.S. Lexis 5798 (2020), *Opp*., p. 9, is misplaced. In *Roman Catholic Diocese v. Cuomo* Governor Cuomo had stated that restrictions would revert to back to stricter limitations as COVID-19 cases increased. The court should, therefore, decline to apply the voluntary cessation exception and dismiss claims based on superseded Executive Orders as moot.

Plaintiff also argue that the federal moratorium does not apply because the CDC Notice is less restrictive than the Governor's Executive Orders. *Opp*., p. 15. The interaction between the CDC Notice and the executive orders is not a model of clarity, however, Connecticut Superior Courts are reviewing evictions pursuant to the CDC Notice for cases that can move forward pursuant to the EOs. *See Threadmill Master Tenant, LLC. v. Fraser*, 2020 Conn. Super. LEXIS 1120 (KNL-CV-19-6042593-S October 13, 2020) and *Ocean Beach Apts., LLC. v. Hodge*, 2020 Conn. Super. LEXIS 1117 (KNL-CV-20-6045021 October 9, 2020).

**Contract Clause** – Plaintiffs state that the Second Circuit has never rejected a 1983 cause of action premised on the Contract Clause. *See Opp*., p. 22. The Second Circuit has applied the legal standard for a Contract Clause violation, *See Donohue v. Cuomo*, 980 F. 3d 53, (2nd Cir. 2020), but defense counsel has been unable to find a Second Circuit case that address the right to a private contract clause action as raised in *Haley v. Pataki,* 106 F.3d 478, 482 (2d Cir. 1997).

**Failure to State a Claim**

**Jacobson -** The plaintiffs' claim that the Governor's reliance on *Jacobson v. Massachusetts* is misplaced. *Opp*., p. 18. The defendant is aware that in *Roman Catholic*

6

*Diocese v. Cuomo*, 2020 U.S. Lexis 5708, __ S.Ct __ (2020), the U.S. Supreme Court found that the plaintiffs had shown that they were likely to prevail on their claim that Governor Cuomo's Executive Order violated their First Amendment Right. Justice Gorsuch stated in his concurrence, "[e]ven if judges may impose emergency restrictions on rights that some of them have found hiding in the Constitution's penumbras, it does not follow that the same fate should befall the textually explicit right to religious exercise." *Id.,* 2020 U.S. LEXIS at *14-15. While the court granted a temporary injunction for a First Amendment right to religious exercise based on a different EO that does not mean that *Jacobson* is not good law.

**Count 1 - Equal Protection Clause** - Plaintiffs claim that commercial landlords and residential landlords are prima facie identical and that the types of tenants they rent to is "not part of the applicable analysis." *Opp.*, p. 27. As stated in defendant's *MIS MTD*, p. 18, the Equal Protection Clause "does not forbid classifications" in the abstract, and instead "simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger* v. *Hahn,* 505 U.S. 1, 10 (1992). Because commercial landlords do not rent to residential tenants who will have to leave their home if evicted, they are not "in all relevant respects alike."

Plaintiffs claim that their equal protection claim is subject to a "heightened scrutiny" because "[t]he Plaintiffs' Amended Complaint states a claim for relief under the Equal Protection Clause based on the Defendant's denial of Plaintiff's constitutional protected right to access the courts." *Opp.*, p. 28. Plaintiffs' Amended Complaint does not include a First Amendment cause of action. See ECF # 23, Amended Comp. Plaintiffs are not allowed to add a First Amendment claim through their Opposition brief, p. 28. *See Lieberman v. American Express Co.*, 2020 U.S. Dist. LEXIS 167279, at *9 n.3 (E.D.N.Y. Sep. 13, 2020) (citing *Doe v. Merck & Co.*, 803 F.

7

App'x 559, 560 n.3 (2d Cir. 2020)). The equal protection claim is also not subject to a "heighted scrutiny" or "intermediate scrutiny" as outlined in *ACA International v. Healy*, 457 F. Supp. 3d 17, 25 (D. Mass. May 6, 2020), which was a First Amendment claim.

**Count 2 – Contract Clause** - Defendant maintains that there is no substantial impairment under the contract clause. As stated in the *MIS MTD*, p. 23, the amount of a security deposit held by a landlord and the time period for evictions are both governed by statute and as a result, it is foreseeable that these provisions can change. As an example, Conn. Gen. Stat. § 47a-21 allows a landlord two hold two months of security deposit. The EOs allow tenants to use excess of one months rent as payment of rent, so landlords still maintain one month's security deposit. It is not unforeseeable that the amount of security deposit that a landlord may hold can decrease. In 1982, Conn. Gen. Stat. § 47a-21was modified and reduce the maximum amount of a security deposit for individuals over 62 who meet certain income requirements. Conn. P.A. 82-249 (SA-6). In 1984 the statute was changed to reduce the amount of maximum-security deposit for any over 62 years of age to one month. Conn. P.A. 84-504(SA-8). Statutes governing landlord/tenant law change and there is no substantial impairment by the EOs.

Plaintiffs cite to *University of Haw. Prof'l Assembly v Cayetano*, 183 F.3d 1096 to arguing that the delay in tenants' payments is a substantial impairment. *Opp*., p. 24. The court in *Univ. of Haw*., 183 F.3d at 1107, stated that the "[a] higher level of scrutiny is required to assess 'abrogation's of government obligations than in the case of legislative interference with the contract of private parties." The court was also not dealing with a highly regulated business of landlord/tenant law.

Plaintiffs argue that the EOs were not issued for a legitimate purpose and that they are neither reasonable or necessary. *Opp*., p. 25-26. The Governor's EOs advance a legitimate

public interest and are reasonable and necessary to do so. Governor Lamont did not issue the executive order to benefit himself or the state of CT, but to benefit a legitimate public interest. As stated in *Apt. Ass'n of L.A. Cty. v. City of Los Angeles*, 2020 U.S. Dist. LEXIS 212769, at *18 (C.D. Cal., November 13, 2020):

> Notably, here, as in *Blaisdell*, the Moratorium is addressed to protect a basic societal need, is temporary in nature, does not disturb landlords' ability to obtain a judgment for contract damages, does not absolve tenants of any obligation to pay any amount of rent, does not appear to impact landlords' ability to obtain housing, and was implemented in the context of a state of emergency. Indeed, the current emergency is arguably more serious than that brought on by the Great Depression, coupling, as it does, the consequences of economic catastrophe with a serious, and worsening, threat to public health.

Plaintiffs argue that the EOs are not necessary because the courts have the discretion to allow a tenant to remain in possession of a property. *Opp.*, p. 26. The plaintiffs' argument is without merit because allowing a court to delay an eviction is not the same as preventing someone from getting a Notice to Quit. The purpose of the Notice to Quit is to have the tenant leave the premises without an eviction. Conn. Gen. Stat. § 47a-23(b) provides that the notice shall be in writing and with substantially, the following form: "I . . hereby give notice that you are to quit possession or occupancy of the (apartment) on or before (here insert the date) for the following reasons. Serving a Notice to Quit can result in a tenant leaving the property without any further action by the landlord. Since the plaintiffs concede that the government's objection to not to have tenants actually removed from the property is a justifiable action, the Executive Orders that do not allow service of a notice to quit are reasonable and necessary.

Plaintiffs claim defendant's reliance on *Elmsford v. Cuomo*, 2020 WL 3498846 (June 29, 2020) is distinguished because the executive orders issued by Governor Cuomo "differ drastically "from Lamont's Executive Orders. *Opp.*, p. 26. Plaintiffs claim that Governor Cuomo's Executive Order 202.38 extended the provision of 202.28 but didn't extend the eviction

9

moratorium past August 19, 2020.[5] While the court in *Elmsford* did deal with an Executive Order scheduled to expire on August 19, 2020, the Court in *Brown v. Azar*, 2020 U.S. Dist. LEXIS 201475 (N.D. GA October 29, 2020) up held the CDC eviction moratorium that went until December 31, 2020 at the time of the decision. Furthermore, the legal argument in defendant's *MIS MTD*, pp. 21-25, supports that the plaintiffs have failed to state a cause of action under the Contract Clause.

**Count 3- Due Process** - Plaintiffs appear to be arguing that they have a substantive due process and procedural due process right because of the landlord's security interest in the security deposit. *Opp*. p. 31. Plaintiffs have provided no case law in support of their argument that this a property right that is protected by the Due Process Clause.

**Count 4 -Taking Clause** - Plaintiffs have limited their takings claim to the argument that the use of the plaintiff using the security deposit to pay rent is a noncategorical taking. *Opp*. p. 33. The EOs allowed tenants to use their security deposits in excess of 30 days to pay rent for the months of April, May or June and EO 7OOO extended that provision for the months of July and August. The reduction of the security deposit to one months rent verses two months rent does not meet the standards of a non-categorical taking for the reason stated in defendant's *MIS MTD*, p. 35-38.

## CONCLUSION

For the reasons stated above and in Defendant's Memorandum of Law in Support of Motion to Dismiss, the defendant respectfully moves the court for dismissal of the Amended Complaint in its entirety.

---

[5] While plaintiffs are correct that EO did not extend the eviction moratorium past August 19, 2020, the eviction moratorium for residential tenant's has been extended by the New York's Tenant Safe Harbor Act until there are no longer restrictions on businesses, public accommodations and nonessential gatherings put in place by the Governor's Executive Orders. 2020 N.Y. ALS 127 (SA-10).

Respectfully submitted,

DEFENDANT
GOVERNOR NED LAMONT

WILLIAM TONG
ATTORNEY GENERAL

BY: */s/ Maria C. Rodriguez*
Maria C. Rodriguez (ct08946)
Philip Miller (ct25056)
Assistant Attorneys General
Attorney General's Office
165 Capitol Avenue, 4th Floor
Hartford, CT 06106
Tel: (860) 808-5050 // Fax: (860) 808-5388
Email: Mariac.rodriguez@ct.gov
Email: Philip.Miller@ct.gov

## **CERTIFICATION**

I hereby certify that on December 31, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Maria C. Rodriguez*
Maria C. Rodriguez
Assistant Attorney General